UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2007 MAR 27  PM 4: 01

CLERK

BY_____
DEPUTY CLERK

| | |
|---|---|
| CHOOSECO LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. __2:07-cv-71__ |
| | ) |
| CHRYSLER CORPORATION, | ) |
| BBDO DETROIT INC., | ) |
| ORGANIC, INC.,  and | ) |
| MARVEL ENTERTAINMENT, INC. | ) |
| | ) |
| Defendants | ) |

**MOTION FOR PRELIMINARY INJUNCTION**

**AND**

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

Chooseco, LLC (hereinafter interchangeably referred to as "Chooseco" and

"Plaintiff") pursuant to the provisions of the Lanham Act *(See 15 U.S.C. § 1116)* and

Rule 65 of the Federal Rules of Civil Procedure, moves this Court for the issuance of a

preliminary injunction seeking Defendants' cessation of all use of CHOOSE YOUR

ADVENTURE during the pendency of the within law suit against defendants

DaimlerChrysler a/k/a Chrysler Corporation, BBDO Detroit, Inc., Organic, Inc. and

Marvel Entertainment, Inc. (collectively hereinafter "Defendants".)

Plaintiff, by and through their attorneys, respectfully submit this memorandum along with Declaration of R.A. Montgomery and Exhibits in support of its application for a preliminary injunction. Plaintiff also refers to and references the *Verified Complaint and the annexed Exhibits* filed simultaneously with the within motion.

# TABLE OF CONTENTS

I. Introduction ................................................................................................ 1

II. Statement of Facts ...................................................................................... 1

    *A. Plaintiff Background Facts* ....................................................................... 1

    *B. Defendants' Background Facts* ................................................................. 5

III. Plaintiff is Entitled to Preliminary Injunctive Relief ................................. 9

    A.   The Standard ........................................................................................... 9

    B.   Irreparable Harm ..................................................................................... 9

    C.   Likelihood of Success on the Merits ....................................................... 10

IV. Relief Sought ........................................................................................... 22

# TABLE OF AUTHORITIES

**Cases**

*Abercrombie & Fitch Co. v. Hunting World, Inc.,* 537 F.2d 4 (2d Cir. 1976) ................. 13

*Aluminum Fabricating Co. v. Season-All Window Corp.,* 259 F.2d 314 (2d Cir. 1958) . 13

*American Home Products Corp. v. Johnson Chemical Co.,* 589 F.2d 103 (2d Cir. 1978)
................................................................................................................ 13

*Arrow Fastener Co. v. Stanley Works,* 59 F.3d 384 (2d Cir. 1995) .................................. 14

*Black & Decker Mfg. Co. v. Big Yank Corp.,* 231 U.S.P.Q. 484 (T.T.A.B. 1986) ............ 17

*Centaur Communications Ltd. v. A/S/M Communications, Inc.,* 830 F.2d 1217 (2d Cir.
1987)................................................................................................................ 20

*Charles Atlas, Ltd. v. DC Comics, Inc.,* 112 F.Supp.2d 330 (S.D.N.Y. 2000) .................. 11

*Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.,* 604 F.2d 200 (2d Cir.
1979)................................................................................................................ 16

*Dr. Seuss Enterprises, L.P. v. Penguin Books USA, Inc.,* 109 F.3d 1394 (9th Cir. 1997)
................................................................................................................ 21

*Dwinell-Wright Co. v. White House Milk Co.,* 132 F.2d 822 (2d Cir. 1943) ................... 21

*Elgin Nat'l Watch Co. v. Illinois Watch Case Co.,* 179 U.S. 665, 45 L. Ed. 365, 21 S. Ct.
270 (1901) ....................................................................................................... 19

*Estate of P. D. Beckwith, Inc. v. Commissioner of Patents,* 252 U.S. 538, 64 L. Ed. 705,
40 S. Ct. 414 (1920) ........................................................................................ 15

*Genesee Brewing Co., Inc. v. Stroh Brewing Co.,* 124 F.3d 137 (2d Cir. 1997).... 9, 10, 11

*Grand Light & Supply Co., Inc. v. Honeywell, Inc.,* 80 F.R.D. 699 (D.Conn. 1978) ......... 9

*Hasbro, Inc. v. Lanard Toys, Ltd.*, 858 F.2d 70 (2d Cir.1988)................................ 9, 17, 20

*Ideal Industries, Inc. v. Gardner Bender, Inc.*, 612 F.2d 1018 (7th Cir.1979) ................ 18

*In re E. I. DuPont de Nemours & Co.*, 476 F.2d 1357 (CCPA 1973) ............................... 15

*Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70 (2d Cir. 1979) ...................... 9

*Lambert Pharmacal Co. v. Bolton Chemical Corp.*, 219 F. 325 (D.N.Y. 1915)............... 21

*Lane Capital Management, Inc. v. Lane Capital Management, Inc.*, 192 F.3d 337 (2d Cir.

  1999).................................................................................................................. 13

*Lang v. Retirement Living Publishing Co.*, 949 F.2d 576 (2d Cir.1991) .......................... 16

*Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867 (2d Cir. 1986) ......... 19

*Majestic Drug Co., Inc., V. Olla Beauty Supply, Inc.*, 1997 WL 37955 (S.D.N.Y. 1997). 20

*McGregor-Doniger, Inc. v. Drizzle, Inc.*, 599 F.2d 1126 (2d Cir. 1979) .......................... 13

*Mobil Oil Corp. v. Pegasus Petroleum Corp.*, 818 F.2d 254 (2d Cir. 1987) ................... 19

*Nature's Bounty, Inc. v. Super X Drugs Corp.*, 490 F. Supp. 50 (E.D.N.Y. 1980) ........... 13

*NBA Props. v. Untertainment Records LLC*, 1999 U.S. Dist. LEXIS 7780 (S.D.N.Y. 1999)

  ..................................................................................................................... 22

*Playboy Enterprises, Inc. v. Chuckleberry Publishing, Inc.*, 687 F.2d 563 (2d Cir. 1982)

  ..................................................................................................................... 13

*Plus Prods. v. Plus Discount Foods, Inc.*, 722 F.2d 999 (2d Cir. 1983) .......................... 20

*Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492 (2d Cir. 1961) *cert. denied,*

  368 U.S. 820, 82 S.Ct. 36, 7 L.Ed.2d 25 (1961) ............................................... 11

*Polymer Tech. Cor. V. Mimran*, 37 F.3d 74 (2d Cir. 1994) ............................................... 9

*Safeway Stores, Inc. v. Safeway Properties, Inc.*, 307 F.2d 495 (2d Cir. 1962)............... 10

*Sun Microsystems v. SunRiver Corp.*, 36 U.S.P.Q.2d 1266, 1995 WL 390696 (N.D. Cal. 1995), amended, recons. denied, stay denied, 1995 U.S. Dist. LEXIS 19012 (N.D. Cal. Sept. 28, 1995) ............................................................................................. 13

*United We Stand America, Inc. v. United We Stand America, N.Y., Inc.*, 128 F.3d 86 (2d Cir. 1997) ................................................................................................ 17

*Warner Bros. v. American Broadcasting Co.*, 720 F.2d 231 (2d Cir. 1983) .................... 19

*Warner-Lambert Co. v. Northside Development Corp.*, 86 F.3d 3 (2d Cir.1996) ............. 9

**Statutes**

15 U.S.C §1057(c) ............................................................................................ 17

15 U.S.C. §§1051 *et. seq.* ................................................................................... 1

15 U.S.C. §1056(c) ............................................................................................ 17

15 U.S.C. §1057(b) ............................................................................................ 12

15 U.S.C. §1072 ................................................................................................ 19

15 U.S.C. §1114(1)(a) ......................................................................................... 11

15 U.S.C. §1115(a) ............................................................................................ 12

15 U.S.C. §1125(a) ............................................................................................ 10

**Other Authorities**

*Trademark Law Revision Act of 1988. Pub. L. 100-667, 102 Stat. 3935 (effective November 16, 1989)* ........................................................................................ 12

## I. Introduction

This is an action for trademark infringement, unfair competition, false designation of origin and dilution arising under the Trademark Act of 1946, 15 U.S.C. §§1051, *et. seq.*, as amended (the "Lanham Act") and for unfair competition and conspiracy under the laws of the State of Vermont. Chooseco owns the world famous trademark CHOOSE YOUR OWN ADVENTURE. This action arises from Defendants' development and deployment of an advertising and promotional campaign for the JEEP Patriot vehicle that uses CHOOSE YOUR ADVENTURE in print, radio, television and Internet advertising specifically targeted at young automobile buyers of the JEEP Patriot vehicle, the very same buyers targeted by Chooseco for selling its products. Defendants adopted and commenced use of CHOOSE YOUR ADVENTURE long after Plaintiff's adoption, use and registration of CHOOSE YOUR OWN ADVENTURE. Chooseco is being irreparably harmed and damaged by Defendants' adoption and use of CHOOSE YOUR ADVENTURE and must be stopped from continuing to advertise, promote products, sell products and promote the JEEP Patriot vehicle using CHOOSE YOUR ADVENTURE. Because of the extensive and nationwide use and advertisement of CHOOSE YOUR ADVENTURE by Defendants, and because it appears that the promotion is going to be short lived, the urgency of this situation is self-evident.

## II. Statement of Facts

### A. Plaintiff Background Facts

R. A. Montgomery, a principal of Chooseco, is the world renowned author of the book series CHOOSE YOUR OWN ADVENTURE, a series of books that was originally published by Bantam Books, and then by its successors. *See Declaration of R.A. Montgomery annexed hereto in support of Plaintiff's Background Facts along with Verified Complaint and annexed Exhibits.* Prior to any use of CHOOSE YOUR ADVENTURE by Defendants, all rights in and

to the CHOOSE YOUR OWN ADVENTURE trademark and book series were owned by Plaintiff. The CHOOSE YOUR OWN ADVENTURE book series is internationally renowned, has received numerous industry accolades, has sold in excess of two-hundred fifty million copies and has been translated into thirty-eight (38) different languages.

Chooseco is the owner of the entire right, title and interest in and to the trademarks listed in the complaint. *See, Verified Complaint ¶25 and Exhibits 1-3* consisting of copies of each of the registrations. In summary, Chooseco has registered CHOOSE YOUR OWN ADVENTURE for books and DVD's and has approved applications for games, playthings, clothing, theatre, and entertainment.

Chooseco is publishing books in the CHOOSE YOUR OWN ADVENTURE series and at present has eighteen titles that it is selling to the general public through book stores, mass merchant merchandisers, wholesale clubs, regional and national chain book stores, toy stores and other specialty markets. *See, Verified Complaint ¶ 26 and Exhibit 4* are the covers for each of the 18 titles. Within the last year, Chooseco has printed in excess of one million copies of books for distribution within the United States. The target demographic for these books is primarily directed at children in the 9 to 12 year-old age range.

Chooseco owns and operates a consumer website *cyoa.com* where it provides interactive games, information about its products, the authors, artists and persons involved in the creation and production of the books as well as sells its books. Additional functions exist for people to sign up for newsletters and become a part of Club CYOA. The domain name *cyoa.com* was in part selected as the primary consumer site by Chooseco because CHOOSE YOUR OWN ADVENTURE is often abbreviated as "cyoa" coupled with the fact that short domain names are preferred for Internet domain names. *See, Verified Complaint ¶ 27 and Exhibit 5* for a depiction of the current *cyoa.com* main page.

Chooseco is in the process of releasing four titles in May that will be full color books sold under the CHOOSE YOUR OWN ADVENTURE brand. *See, Verified Complaint ¶ 28 and Exhibit 6* containing depictions of the covers for each of the 4 titles being released in Spring 2007. The target demographic for these books is primarily directed at children in the 7 to 9 year-old age range.

When the CHOOSE YOUR OWN ADVENTURE books were originally published by Bantam Books, and then its successors, the children reading those books at the time ranged from approximately 7 to 14 year-olds. The sales of the series was strong within the first two years of its launch and by 1983 there were many titles in the series with cumulative sales over one (1) million copies. Based upon the information available to Chooseco, the age range of children who actively read the series during this period of time now range from 20 to 38 year-olds. It is this target audience that Chooseco has effectively focused its efforts on as the "nostalgia" buyer for their own children.

Chooseco's publishing plans include the release of approximately one title per month over the course of the remainder of 2007 with an expected total of thirty different titles in print by the end of 2007. This includes the planned release of a new series aimed at the 12-14 year-old age range.

Chooseco entered into licensing agreements for the publication of thirty-six books in the CHOOSE YOUR OWN ADVENTURE series for the educational marketplace with Sundance/Newbridge Educational Publishing, LLC of Northborough Massachusetts (hereinafter "Sundance"). Sundance has been actively marketing the first eighteen titles since mid-2005, and a second group of eighteen titles since mid-2006. In total, Sundance is presently marketing thirty-six different titles to the educational marketplace. *See, Verified Complaint ¶*

*31 and Exhibit 7* containing a photograph of the spines of the 36 titles presently sold by Sundance under license from Chooseco.

Chooseco entered into a licensing agreement with Lean Forward Media LLC ("LFM") of Los Angeles, California for the creation and release of interactive DVD's based upon certain books in the CHOOSE YOUR OWN ADVENTURE series. The LFM DVD was widely featured by Quaker Oats on approximately eighteen million boxes of Life cereal in the period from mid-August 2006 through October 2006. *See, Verified Complaint ¶ 32 and Exhibit 8* for a photograph of the Life cereal box showing CHOOSE YOUR OWN ADVENTURE prominently featured thereon along with the side panel showing attribution of the CHOOSE YOUR OWN ADVENTURE trademark to Chooseco. *See, Verified Complaint ¶ 32 and Exhibit 9* for a photograph of the DVD packaging prominently showing CHOOSE YOUR OWN ADVENTURE. The founders of LFM are the recipients of a first place award from Forbes magazine for their Harvard Business School business plan to develop the CHOOSE YOUR OWN ADVENTURE trademark and books series into the DVD marketplace. LFM raised several million dollars for the development of DVD's and in the course of those negotiations, the high value of the CHOOSE YOUR OWN ADVENTURE trademark was often cited as a basis for the positive prospects of the product, its launch and the ability to garner significant attribution and notoriety quickly in the marketplace.

Chooseco is also working on many other projects for the development of the CHOOSE YOUR OWN ADVENTURE brand. Many of the areas presently being explored are television and theatrical rights and similar entertainment opportunities as well as the rights to make action figures and to implement down-loadable and interactive single and multi-player gaming on the Internet. Chooseco views its prospects for future development of the CHOOSE YOUR OWN ADVENTURE brand on the Internet to be pivotal in its long-range development plans for the

highly innovative, well regarded and "safe" interactive content that it owns and has the ability to further develop and exploit.

Discussed in the attached declaration of R.A. Montgomery, CHOOSE YOUR OWN ADVENTURE has been discussed in many different articles over the last several years. *See Declaration of R. A. Montgomery, ¶¶ 5-12 and Exhibits 1 -7 attached to the Declaration.* The July 2005 issue of WIRED demonstrates the importance and recognition of the series on modern day pop culture and the follow on article in the June 2006 WIRED magazine employing the well known CHOOSE YOUR OWN ADVENTURE multiple choice, multiple ending demonstrates how this concept and the brand has become part of the collective consciousness of modern day popular culture.

Additional articles by the Associated Press, the Wall Street Journal, the Burlington Free Press and Newsweek further demonstrates the wide spread recognition of CHOOSE YOUR OWN ADVENTURE. It would be inconceivable for an unknown or startup publisher without a well recognized brand to ever get such press mentions about its products. Here, Chooseco has been highly successful in recent years of obtaining such press coverage. In addition to those mentioned above, Chooseco has obtained press coverage in specialized industry publications, including the Teaching K-8 magazine which is directed at teachers for the primary market for these books. Publishers Weekly is the well known and highly regarded book industry publication that is distributed throughout the country.

### B. Defendants' Background Facts

Defendants are collectively and cooperatively engaged in an advertising campaign titled CHOOSE YOUR ADVENTURE promoting and selling JEEP Patriot vehicles. In connection with the CHOOSE YOUR ADVENTURE campaign, Defendant DaimlerChrysler has utilized its domain *patriotadventure.com*. The starting page of the *patriotadventure.com* website can be

seen in Exhibit 10 attached to the Verified Complaint. At that domain, Defendant DaimlerChrysler provides three different paths of entertainment:

1.   The Way-Beyond Trail – "A Really, Really Interactive Film" prominently displaying CHOOSE YOUR ADVENTURE. *See Verified Complaint Exhibit 11.* In each scene, CHOOSE YOUR ADVENTURE is prominently displayed. At the end of some of the scenes, the film characters look at the person on the screen and ask what do you want to do next and the user is confronted with one to three choices to direct the story. This is an attempt to utilize a similar format that is employed in the CHOOSE YOUR OWN ADVENTURE books but without the compelling choice points expected in CHOOSE YOUR OWN ADVENTURE. The story also includes inappropriate clips for teenage and under children, including a scene where one of the characters travels over a river on a "zip line" naked. *See Verified Complaint Exhibit 12.*

2.   The Patriot Factor – "An interactive comic book that you can help write!" The second path provides a means for JEEP and Marvel (of comic book fame) to promote the JEEP Patriot around an interactive comic book that is developed by the users of the website. *See Verified Complaint Exhibit 13.* The essence of this portion of the website is to provide a framework for story development which is highly controlled and allowing "You decide where the story goes!" *See Verified Complaint Exhibit 14.*

3.   The third path available from the *patriotadventure.com* takes the website user to the main JEEP web page which is obviously used to sell JEEP vehicles and allow the user to configure their vehicle of choice, the exterior and interior color, and the various options. *See Verified Complaint Exhibit 15.*

As can be readily seen in Exhibits 11, 12, 13, 14 and 15 of the Verified Complaint, Defendants are using CHOOSE YOUR ADVENTURE. Extensive advertisement of CHOOSE YOUR ADVENTURE is found on the Internet and at the sites shown in the Exhibits. There is no question that JEEP vehicles can be purchased in at least nine dealerships throughout the State of Vermont. *See Verified Complaint ¶ 12.* Given the wide spread use of the Internet throughout the State of Vermont, coupled with the availability and well known frequency of JEEP vehicles that travel the roads of Vermont, it is indisputable that the CHOOSE YOUR ADVENTURE advertising campaign reaches within the State of Vermont, and that CHOOSE YOUR ADVENTURE is used by Defendants throughout the State of Vermont.

The use of CHOOSE YOUR ADVENTURE by Defendants is virtually identical to Chooseco's trademark CHOOSE YOUR OWN ADVENTURE except for the omission of "own". When encountering CHOOSE YOUR ADVENTURE, a consumer will readily associate the mark with CHOOSE YOUR OWN ADVENTURE by automatically inserting the "own" since it is clearly implied by the usage of CHOOSE YOUR ADVENTURE by Defendants.

Reviewing the blogs attached to the complaint it is patently obvious that Defendants have achieved their objective by falsely creating an association with CHOOSE YOUR OWN ADVENTURE. *Verified Complaint ¶¶ 35 & 36, and Exhibits 16 & 17 annexed to Verified Complaint.* In both blogs, the writer titles the piece as CHOOSE YOUR OWN ADVENTURE despite the fact that the Defendants advertising campaign omits the "own." Furthermore, as can be seen in the *youtube.com* entry, the initial comment on the page apparently posting one of the television advertisements that is running as part of the CHOOSE YOUR ADVENTURE campaign states: "CHOOSE YOUR OWN ADVENTURE? This whole campaign doesn't make sense to me.." *Verified Complaint ¶ 41, and Exhibit 20 annexed to Verified Complaint.*

According to both the Detroit News and the Press Release issued by Defendant

DaimlerChrysler, the CHOOSE YOUR ADVENTURE advertising campaign encompasses

local, regional and national, print, radio and television advertising in addition to the Internet

advertising discussed above. *Verified Complaint ¶¶ 38 & 39, and Exhibits 18 & 19 annexed to*

*Verified Complaint.* One such television advertisement is shown at both http://wm.world.mii-

streaming.net/media/convergent/dcstudios/VIDEO/2007/mar/patriot_wolf.wmv and

http://www.youtube.com/watch?v=4_6kuEtEMEo, , ends the advertisement by stating "JEEP

Patriot. Starting at $14,985. Choose Your Adventure at *patriotadventure.com.*" *Verified*

*Complaint ¶¶ 40 and 41.* Not only are these television advertisements appearing on the Internet

and are fully accessible throughout the State of Vermont, Chooseco has been advised by a

number of sources that they have either seen the advertisement on television or heard a similar

advertisement on the radio.

Defendants are advertising the CHOOSE YOUR ADVENTURE campaign in

publications directed at the 23 to 30 year-old market. In particular, Defendants' press

announcement includes a "sampling" of print advertisement placements in sports publications

(Sports Illustrated, USA Today), music publications (Rolling Stone), men's lifestyle

publications (GQ, Men's Health), outdoor adventure (Four Wheeler, Runner's World) and

women's lifestyle (Jane, Cosmopolitan). *Exhibit 19 attached to Verified Complaint.* There are

two versions of the advertisement each consisting of a different "connect the dots" game. *Id.*

These print advertisements are clearly intended to constitute an interactive game, all playing

upon the target audience's well known association with the CHOOSE YOUR OWN

ADVENTURE brand.

Chooseco's primary consumer website is *cyoa.com. See, Verified Complaint paragraph*

*27 and Exhibit 5 attached to Verified Complaint.* The domain name *cyoa.com* was in part

selected as the primary consumer site by Chooseco because CHOOSE YOUR OWN

ADVENTURE is often abbreviated as "cyoa" coupled with the fact that short domain names

are preferred for Internet domain names. The *youtube.com* page comments about the

advertising campaign include: "wow. makes no sense. i checked out the website too . . . really

bad CYOA videos. also, looks like a ripoff of the Mimi and Flo Show website." Clearly, the

public is associating the CHOOSE YOUR ADVENTURE campaign with CHOOSE YOUR

OWN ADVENTURE.

### III. Plaintiff is Entitled to Preliminary Injunctive Relief

**A.**            **The Standard**

A party seeking injunctive relieve ordinarily must show: (a) it will suffer irreparable

harm in the absence of an injunction; and (b) either (1) a likelihood of success on the merits, or

(2) sufficiently serious questions going to the merits to make them a fair ground for litigation

and a balance of hardships tipping decidedly in the movant's favor. *See, Genesee Brewing Co.,*

*Inc. v. Stroh Brewing Co., 124 F.3d 137, 142 (2d Cir. 1997); Polymer Tech. Cor. V. Mimran,*

*37 F.3d 74, 77-78 (2d Cir. 1994); Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc., 596 F.2d 70,*

*72 (2d Cir. 1979).* Chooseco bases its request for injunctive relief on a demonstration of

irreparable harm and a likelihood of success on the merits. Plaintiff tempers its requested relief

being mindful of the balance of hardships and the general reluctance of courts to not issue

recall orders for magazines.

**B.**            **Irreparable Harm**

A showing of irreparable harm is a prerequisite to the granting of an injunction. *Grand*

*Light & Supply Co., Inc. v. Honeywell, Inc., 80 F.R.D. 699, 702 (D.Conn. 1978). Hasbro, Inc.*

*v. Lanard Toys, Ltd., 858 F.2d 70, 73 (2d Cir.1988); Warner-Lambert Co. v. Northside*

*Development Corp., 86 F.3d 3, 6 (2d Cir.1996)* However, the Second Circuit has consistently

held that in the context of trademark and unfair competition injunctions, the requirement of irreparable harm does not carry any independent weight and accordingly a showing of likelihood of confusion, the predicate to establishing both trademark infringement and unfair competition claims, establishes irreparable harm. *See, Genesee Brewing, 124 F.3d at 142.* The "irreparable injury" requirement is merely a specific application of the general doctrine that equitable relief cannot be granted unless Plaintiff shows that the remedy at law is inadequate. It is well known that advertising and promotional campaigns are typically short lived. In the present situation it appears that Defendants' CHOOSE YOUR ADVENTURE promotion is car specific and given the Detroit News article that there are only two television advertisements as part of this promotion, it would not appear that there is a long term commitment by Defendants to the CHOOSE YOUR ADVENTURE promotion. *See Verified Complaint Exhibit 18.* Plaintiff needs the remedy of injunctive relief because the anticipated short time that Defendants will be infringing coupled with the fact that they are not independently charging customers for products or services bearing the infringing mark will make it difficult to quantify the damage caused to Chooseco. It is also established in the Second Circuit that a plaintiff does not need to prove catastrophic harm, but that some harm is probable and the harm to the Plaintiff is likely irreparable. *Safeway Stores, Inc. v. Safeway Properties, Inc., 307 F.2d 495, 500 (2d Cir. 1962)* Accordingly, an examination of the merits necessarily addresses the question of irreparable harm.

        **C.**        **Likelihood of Success on the Merits**

Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a), prohibits a manufacturer from using "in commerce any word, term, name, symbol, or device" or "any false designation of origin" that is likely to cause confusion" as to the origin of the product. Section 43(a) protects

registered trademarks, as well as unregistered marks from unfair competition. *See also,*

*Genesee Brewing, 124 F.3d at 142.*

Section 32 of the Lanham Act, 15 U.S.C. §1114(1)(a), prohibits "[a]ny person who

shall, without the consent of the registrant – (a) use in commerce any reproduction, counterfeit,

copy, or colorable imitation of a registered mark in connection with the sale, offering for sale,

distribution, or advertising of any goods or services on or in connection with which such use is

likely to cause confusion, or to cause mistake, or to deceive … [and] shall be liable in a civil

action by the registrant for the remedies hereinafter provided."

Plaintiff demonstrates its entitlement to an injunction because there is a likelihood of

confusion between CHOOSE YOUR ADVENTURE and CHOOSE YOUR OWN

ADVENTURE. Analyzing the likelihood of confusion in a trademark case is a fact-specific

inquiry which requires an examination of the following factors: (1) the strength of plaintiff's

mark; (2) the similarity of the parties' marks; (3) the proximity of the parties products in the

marketplace; (4) the likelihood that the prior user will bridge the gap between the products; (5)

actual confusion; (6) the defendant's good or bad faith in adopting the mark; (7) the quality of

the junior user's product, and (8) the sophistication of the relevant consumer group. *Charles*

*Atlas, Ltd. v. DC Comics, Inc., 112 F.Supp.2d 330, 339 (S.D.N.Y. 2000) citing Polaroid Corp.*

*v. Polarad Electronics Corp., 287 F.2d 492, 495 (2d Cir. 1961) cert. denied, 368 U.S. 820, 82*

*S.Ct. 36, 7 L.Ed.2d 25 (1961).* The relevant factors are discussed herein demonstrating

Plaintiff's likelihood of success on the merits.

*Plaintiff's Mark is Strong.* Plaintiff's mark is indeed strong. Plaintiff has three (3)

trademark registrations covering CHOOSE YOUR OWN ADVENTURE for books and DVD's

and the mark is well recognized in the marketplace. *Verified Complaint ¶ 25, sub-paragraphs*

*a-c and Exhibits 1-3.* Plaintiff has three (3) pending applications for products and services

(clothing, toys, games and entertainment services), all of which have passed full examination

by the Trademark Office. *Verified Complaint ¶ 25, sub-paragraphs d-f.* The prima facie

evidentiary status of marks registered on the Principal Register is created by Lanham Act §§

7(b) and 33(a).

Lanham Act § 7(b), 15 U.S.C. §1057(b), provides:

> (b) A certificate of registration of a mark upon the principal register provided by
> this Act shall be prima facie evidence of the validity of the registered mark and
> of the registration of the mark, of the registrant's ownership of the mark, and of
> the registrant's exclusive right to use the registered mark in commerce on or in
> connection with the goods or services specified in the certificate, subject to any
> conditions or limitations stated in the certificate.

Lanham Act § 33(a), 15 U.S.C. §1115(a), provides:

> (a) Any registration issued under the Act of March 3, 1881, or the Act of
> February 20, 1905, or of a mark registered on the principal register provided by
> this Act and owned by a party to an action shall be admissible in evidence and
> shall be prima facie evidence of the validity of the registered mark and of the
> registration of the mark, of the registrant's owner ship of the mark, and of the
> registrant's exclusive right to use the registered mark in commerce on or in
> connection with the goods or services specified in the registration subject to any
> conditions or limitations stated therein, but shall not preclude another person
> from proving any legal or equitable defense or defect, including those set forth
> in subsection (b), which might have been asserted if such  mark had not been
> registered.

Sections 7(b) and 33(a) define the scope of the presumption of validity accorded to a

non-incontestable registered mark and under current law have been clarified and strengthened.

*Trademark Law Revision Act of 1988. Pub. L. 100-667, 102 Stat. 3935 (effective November 16,*

*1989).* The Trademark Law Revision Act amendments make it clear that such contestable

registration is not only prima facie evidence of the registrant's exclusive right to use the mark,

but is also prima facie evidence of: the validity of the registered mark; the registration of the

mark; and the registrant's ownership of the mark. The statute grants to the registrant the

presumptive exclusive right to use the mark, and only where there is a claim and proof of prior

use is there a defense against such an infringement claim. *Sun Microsystems v. SunRiver Corp.,*
*36 U.S.P.Q.2d 1266, 1995 WL 390696 (N.D. Cal. 1995), amended, recons. denied, stay denied,*
*1995 U.S. Dist. LEXIS 19012 (N.D. Cal. Sept. 28, 1995).* The Courts teach us that a registration
is prima facie evidence of the exclusive rights to the mark. *American Home Products Corp. v.*
*Johnson Chemical Co., 589 F.2d 103 (2d Cir. 1978) ("Strong presumption of validity.");*
*Nature's Bounty, Inc. v. Super X Drugs Corp., 490 F. Supp. 50 (E.D.N.Y. 1980) (strong*
*presumption that mark is suggestive rather than descriptive); Playboy Enterprises, Inc. v.*
*Chuckleberry Publishing, Inc., 687 F.2d 563 (2d Cir. 1982) (registration indicates that "the*
*mark is not merely descriptive and gives to it a strong presumption of validity"); Lane Capital*
*Management, Inc. v. Lane Capital Management, Inc., 192 F.3d 337 (2d Cir. 1999)*
*("Registration by the Trademark Office without proof of secondary meaning creates the*
*presumption that the mark is more than merely descriptive and thus that the mark is inherently*
*distinctive.").* The courts should not overrule the action of the Trademark Office to whose care
Congress has entrusted the preliminary determination as to whether a mark fulfills the
requirements of the statute. *Aluminum Fabricating Co. v. Season-All Window Corp., 259 F.2d*
*314 (2d Cir. 1958). McGregor-Doniger, Inc. v. Drizzle, Inc., 599 F.2d 1126, 1132 (2d Cir.*
*1979) ("[T]he decision of the Patent and Trademark Office to register a mark without*
*requiring proof of secondary meaning affords a rebuttable presumption that the mark is more*
*than merely descriptive."); See also, Abercrombie & Fitch Co. v. Hunting World, Inc., 537*
*F.2d 4 (2d Cir. 1976)* Here, the Trademark Office, on six (6) different occasions, by five (5)
different examiners, has determined that the trademark is registrable without proof of acquired
distinctiveness or secondary meaning which constitutes a strong administrative presumption
that the mark is in fact distinctive and a valid trademark. *See, Arrow Fastener Co. v. Stanley*

*Works*, 59 F.3d 384 (2d Cir. 1995). Accordingly, CHOOSE YOUR OWN ADVENTURE is a strong and inherently distinctive mark.

  *The Marks are Similar*. Here, there is no question that CHOOSE YOUR OWN ADVENTURE is similar in all respects to CHOOSE YOUR ADVENTURE, but for the omission of the adjective "own". In this context, the omission of the adjective, a modifier of ADVENTURE, does not alter the meaning of the trademark. Furthermore, when an individual sees CHOOSE YOUR ADVENTURE, they automatically assume and insert the "own" in their mind rendering the mark's meaning identical. Chooseco is aware of instances where this has already happened.

  i.  In Exhibit 16 annexed to the Verified Complaint, is the blog listing: http://blog.clickz.com/070315-145123.html which is titled "Choose Your Own Adventure: Jeep Patriot Edition" and the blog starts with: "It was probably inevitable that someone would take the faddish Choose Your Own Adventure books concept and apply it to online video." *See Verified Complaint ¶ 35.*

  ii.  In Exhibit 17 annexed to the Verified Complaint is the blog listing from http://www.joeyinteractive.com/blog/ which is titled Choose Your Own Adventure (March 19th 2007) and states: "Someone has finally taken the faddish Choose Your Own Adventure books concept and applied it to online video. That someone is Jeep, who along with Organic has created a fun microsite that let's you guide the decisions of a band of four friends on a backwoods treasure hunt starring its Patriot model." *See Verified Complaint ¶ 36.*

  iii.  Exhibit 20 annexed to the Verified Complaint is the *youtube.com* page where there are comments about this advertising campaign. The initial comment for the page makes a direct reference to CHOOSE YOUR OWN ADVENTURE by

stating "Choose your own adventure? This whole campaign doesn't make any sense to me." *See Verified Complaint Exhibit 20.* Additional comments on the page from others include: "wow. makes no sense. i checked out the website too . . . really bad CYOA videos. also, looks like a ripoff of the Mimi and Flo Show website."

Exhibits 16 and 17 show that the blog writers automatically inserted the "own" into the title of their articles demonstrating that there is an immediate and subliminal association by the writer with the correct form of the mark as CHOOSE YOUR OWN ADVENTURE and the famous and well known books sold by Plaintiff. Further, by each making a specific reference to the books themselves and titling their stories as CHOOSE YOUR OWN ADVENTURE despite the fact that Defendants are calling their advertising campaign CHOOSE YOUR ADVENTURE further exemplifies the automatic and subconscious association with Plaintiff. The *youtube.com* entry discussed above and shown in Exhibit 20 annexed to the Verified Complaint further supports and demonstrates that despite the omission of the adjective "own" by Defendants, the public immediately inserts the adjective and believes that there is an immediate association with the CHOOSE YOUR OWN ADVENTURE trademark. As the Supreme Court observed: "The commercial impression of a trademark is derived from it as a whole, not from its elements separated and considered in detail. For this reason it should be considered in its entirety." *Estate of P. D. Beckwith, Inc. v. Commissioner of Patents, 252 U.S. 538, 545-46, 64 L. Ed. 705, 40 S. Ct. 414 (1920).* The marks are virtually identical and have the same appearance, sound, connotation and commercial impression. *See, In re E. I. DuPont de Nemours & Co., 476 F.2d 1357, 1361 (CCPA 1973).* As shown herein, it is unmistakable that the public regards them as synonymous.

*The Products and Services Are Proximate in the Marketplace*. The proximity factor assesses the degree to which two products compete with each other. *Lang v. Retirement Living Publishing Co., 949 F.2d 576, 582 (2d Cir.1991).* Clearly, Plaintiff is not in the automobile business. However, when looking at all of the facts and circumstances related to this infringement, it is obvious that Defendants are promoting the JEEP Patriot vehicle by employing both the interactive movie The Way-Beyond Trail as well as the interactive comic book The Patriot Factor. *See Verified Complaint ¶¶ 34.a and 34.b, and Exhibits 11, 12, 13 & 14 annexed thereto.* Furthermore, it is clear from the blogs and *youtube.com* entry discussed above, that the consuming public is making the direct association between the interactive nature of Chooseco's products and Defendants' advertising campaign. Chooseco's United States Registration No. 2913403 for CHOOSE YOUR OWN ADVENTURE issued on December 21, 2004  includes among other things comic books featuring multiple choice, multiple ending fiction stories that are recorded on CD's, DVD's or are downloaded from global computer networks[1]. *See Verified Complaint ¶ 25.b  and Exhibit 2 attached thereto.* Chooseco has developed and owns interactive comic book content as well as electronic interactive comic book creation products. Since Defendants are applying the infringing mark to one of the several products used and registered by Plaintiff, the products are proximate in the marketplace. "In order to be confused, a consumer need not believe that the owner of a mark actually produced the item and placed it on the market ... The public's belief that the mark's owner sponsored or otherwise approved the use of the trademark satisfies the confusion requirement." *Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd., 604 F.2d 200, 204-5 (2d Cir. 1979).* Through the use of CHOOSE YOUR ADVENTURE by Defendants, there is an automatic association in the minds of the consumer of the sponsorship of Chooseco by such unauthorized

---

[1] Plaintiff's counsel notes that the phraseology "global computer networks" was and has been used by the United

use. A trademark owner can register its own mark for promotional goods and can prevent a

third party from using the mark on promotional products. *Black & Decker Mfg. Co. v. Big Yank*

*Corp., 231 U.S.P.Q. 484 (T.T.A.B. 1986) (maker of WORKMATE tools successfully opposed*

*registration of WORK-MATES for work clothing).* Moreover, Plaintiff's United States pending

Application Nos. 78269507 and 78378045 for CHOOSE YOUR OWN ADVENTURE cover

among other things, electronic and interactive games. *See Verified Complaint ¶ 25.d and 25.e.*

Clearly, the website activities consist of interactive gaming all for the purpose of entertainment

and to engage the potential purchasers of JEEP Patriot vehicles. Defendants are using

CHOOSE YOUR ADVENTURE to sell vehicles but are creating an association and affiliation

with CHOOSE YOUR OWN ADVENTURE by the very interactive nature of the overall

marketing campaign. The totality of the circumstances demonstrates a proximity in the

marketplace.

    *Plaintiff demonstrates its intent to "bridge the gap."* Bridging the gap refers to the

likelihood that the senior user of a trade mark or trade dress will enter the market in which the

junior user operates. *Hasbro, at 78.* The Trademark Law Revision Act of 1988 added § 7(c) to

the Lanham Act introducing a new concept to United States law – a federal statutory

"constructive use" date for priority purposes. 15 U.S.C. §1056(c). The effect of the amendment

gives priority of right to the first applicant over any subsequent user of the same or confusingly

similar mark. *Lanham Act § 7(c), 15 U.S.C. §1057(c). United We Stand America, Inc. v. United*

*We Stand America, N.Y., Inc., 128 F.3d 86 (2d Cir. 1997) ("The owner's right to bar infringing*

*use does not depend on registration prior to the infringer's use.").* As shown by Chooseco's

trademark applications for entertainment services, games and the like, Chooseco has

demonstrated that it has squarely contemplated the very type of interactive products offered and

States Patent and Trademark Office to refer to the Internet.

provided by Defendants in connection with the CHOOSE YOUR ADVENTURE advertising campaign. *See Verified Complaint ¶¶ 25.d and 25.e.* There is no known evidence that Defendants have used CHOOSE YOUR ADVENTURE prior to Plaintiff's adoption, application for, or registration of CHOOSE YOUR OWN ADVENTURE. As shown in the attached trademark applications, long before Defendants' adoption and use of CHOOSE YOUR ADVENTURE, Plaintiff had a bona-fide intent to use CHOOSE YOUR OWN ADVENTURE and has used CHOOSE YOUR OWN ADVENTURE for the very activities engaged in by Defendants.

*Plaintiff is aware of Actual Confusion.* Evidence of actual confusion is not required to prove the likelihood of confusion between the two marks. *Ideal Industries, Inc. v. Gardner Bender, Inc., 612 F.2d 1018, 1024 (7th Cir.1979).* However, here we have actual confusion. As shown in the blogs and the *youtube.com* entries discussed elsewhere herein, people have immediately and mistakenly believed that the mark used by Defendants is Plaintiff's CHOOSE YOUR OWN ADVENTURE and accordingly it would appear that Chooseco has licensed or otherwise authorized the use of CHOOSE YOUR ADVENTURE when no such authorization was ever obtained. *See Verified Complaint ¶¶ 35-37 and 41 and Exhibits 16, 17 and 20 annexed thereto.* A showing of actual confusion strongly demonstrates a likelihood of confusion. *See, Charles of the Ritz Group Ltd. v. Quality King Distributors, Inc., 832 F.2d 1317 (2d Cir. 1987).* Here, there is actual confusion in that in the three instances cited there was an immediate and clear association with CHOOSE YOUR OWN ADVENTURE and Plaintiff's well known books.

*Defendants Bad Faith in adopting CHOOSE YOUR ADVENTURE.* It has long been established that proof of defendant's intent to deceive or confuse is not required for infringement of a federally registered mark but rather is presumed. *Elgin Nat'l Watch Co. v.*

*Illinois Watch Case Co.*, 179 U.S. 665, 45 L. Ed. 365, 21 S. Ct. 270 (1901); *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 875 (2d Cir. 1986).* The Second Circuit has "recognized that evidence of intentional copying raises a presumption that a second comer intended to create a confusing similarity of appearance and succeeded." *Warner Bros. v. American Broadcasting Co.*, 720 F.2d 231, 246 (2d Cir. 1983); *Mobil Oil Corp. v. Pegasus Petroleum Corp.*, 818 F.2d 254, 258 (2d Cir. 1987) (intentional copying gives rise to a presumption of a likelihood of confusion).* It is hard to imagine that companies such as Chrysler Corporation one of the three American automobile manufacturers, BBDO advertising agency, one of the world largest advertising agencies, or Marvel Entertainment one the world's best known comic book companies would not: i) have conducted some sort of search and uncovered Chooseco's trademark registrations and pending applications; ii) that when in fact they are seeking to establish an advertising and marketing program directed at young buyers 23 to 30, that they would not have done sufficient market research with people of those ages who would have said or otherwise mentioned "hey this is like CHOOSE YOUR OWN ADVENTURE" or something like that which would have caused them to research the matter more closely. Each of these companies have lawyers on staff and they each retain outside counsel, including counsel versed in trademarks. It is implausible that they could just make a mistake so grave when they are spending millions of dollars on a multi-media advertising campaign and would not have conducted the minimal amount of due diligence to verify that the proposed use of CHOOSE YOUR ADVENTURE was not infringing. "Registration of a mark on the principal register … shall be constructive notice of the registrant's claim of ownership thereof." *15 U.S.C. §1072.* Irrespective of whether or not Defendants actually conducted the necessary investigations to determine if the proposed use of CHOOSE YOUR ADVENTURE was not infringing they had constructive notice of Plaintiff's rights thereon by statute and cannot now claim that they in

good faith adopted CHOOSE YOUR ADVENTURE. Defendants copying of CHOOSE YOUR

OWN ADVENTURE and use of CHOOSE YOUR ADVENTURE causes confusion with

Chooseco's trademark.

*The unsophisticated relevant consumer group weighs heavily in Plaintiff's favor*.

Unsophisticated consumers aggravate the likelihood of confusion. *Hasbro, at 79, citing,*

*Centaur Communications Ltd. v. A/S/M Communications, Inc., 830 F.2d 1217, 1228 (2d Cir.*

*1987). Plus Prods. v. Plus Discount Foods, Inc., 722 F.2d 999, 1007 (2d Cir. 1983)*

*(Sophistication of consumers usually militates against a finding of a likelihood of confusion.)*

Plaintiff's primary products consisting of books sell in the retail market for $5.99. Defendant

clearly does not charge for access or use to its website, nor does it charge consumers to view

their advertisements or their promotions, whether they be, print, radio or television. Rather, it is

clear that Defendants' intentions are to provide free and unrestricted access to its interactive

movie, "driving" people to its website in the hope that they will through the interactive

experience desire to purchase a JEEP Patriot vehicle. Otherwise, why would Defendants

develop such an elaborate marketing schema. Plaintiff's products are low cost and Defendants

are at no cost. *Majestic Drug Co., Inc., V. Olla Beauty Supply, Inc., 1997 WL 37955 (S.D.N.Y.*

*1997) (The low involvement of the average consumer in the purchase of inexpensive, impulse-*

*buy products retailing for approximately $1.99 to $2.50 per unit leads to a conclusion that the*

*purchasers of such products are unsophisticated, disengaged, and therefore relatively easily*

*confused.)* Accordingly, this factor tips heavily in Plaintiff's favor.

*Plaintiff Demonstrates its Likelihood of Success on Merits*. Having reviewed the

Likelihood of Confusion factors, Chooseco demonstrates a considerable likelihood of success

on the merits of its claims. The courts teach us that when the issue of likelihood of confusion is

in doubt, the question will be resolved in favor of the senior user. *Lambert Pharmacal Co. v.*

*Bolton Chemical Corp., 219 F. 325 (D.N.Y. 1915); Dr. Seuss Enterprises, L.P. v. Penguin Books USA, Inc., 109 F.3d 1394, n.14, (9th Cir. 1997) (In a close case amounting to a tie, doubts are resolved in favor of the senior user. Preliminary injunction against trademark infringement was affirmed.)* When the evidence is weighed and the scales balance equally, the doubt is resolved in favor of the party who has built up valuable rights in the mark. *Dwinell-Wright Co. v. White House Milk Co., 132 F.2d 822 (2d Cir. 1943) (where the junior user has been using a mark on non-competitive goods for many years, senior user's rights will yield more readily to a well-established newcomer.)* Here, Defendants have only recently adopted CHOOSE YOUR ADVENTURE, and are obviously planning to use it for a relatively short period of time. Plaintiff must protect its reputation in both competing and non-competing goods. Accordingly, Plaintiff demonstrates a likelihood of success on the merits of its claims.

### IV. Relief Sought

In cases of trademark infringement, and allegations of trademark dilution, the Court must weigh the balance of hardships as between the parties. The Court in the present instance can order a total cessation of all uses of CHOOSE YOUR ADVENTURE by Defendants, subject to a balancing of the hardships. In this case, the Court will likely determine that it is not feasible or practical for Defendants to be able to recall all infringing uses of CHOOSE YOUR ADVENTURE from the marketplace. *See, NBA Props. v. Untertainment Records LLC, 1999 U.S. Dist. LEXIS 7780 (S.D.N.Y. 1999)  (Court held that a total recall of all magazines with an advertisement containing an infringing trademark was not feasible, that recall orders involving books and magazines are generally denied, and limited the injunction to stop all prospective infringing conduct.)* Accordingly, for the reasons set forth herein, Plaintiff seeks an injunction to stop all prospective uses of CHOOSE YOUR ADVENTURE by Defendants and stop all subsisting uses which Defendants can immediately effectuate.

Chooseco also recognizes the speed with which information travels across the Internet, and accordingly, the requested relief herein takes into account the necessity of quickly undoing that which has already been done – the unauthorized use of CHOOSE YOUR ADVENTURE and the damage caused to the CHOOSE YOUR OWN ADVENTURE trademark by Defendants.

Specifically, Plaintiff, requests:

a.    Defendants immediately cease from creating any new advertisements, that use CHOOSE YOUR ADVENTURE, including but not limited to: print, radio, television or Internet;

b.    Defendants immediately stop distributing to media outlets any advertisements that use CHOOSE YOUR ADVENTURE, including but not limited to: radio or television stations, or to magazine, newspaper or other print venues for such advertisements;

c.    Defendants, within three (3) days of the order of the Court, modify any and all websites that they control by deleting CHOOSE YOUR ADVENTURE, including but not limited to: http://www.patriotadventure.com/;

d.    Defendants, within three (3) days of the order of the Court, modify any and all websites that they control by adding to the footer in similar size and font type as used by DaimlerChrysler on http://www.patriotadventure.com/ and state: "CHOOSE YOUR OWN ADVENTURE is a registered trademark of Chooseco LLC" which will include a hyperlink to http://www.cyoa.com;

e.    Defendants comply with such other order of the Court as the Court may determine is just and proper in the circumstances;

f.    Defendants, within five (5) days of the order of the Court, certify its compliance with the order of the Court as specified in the Court's order; and.

g.    Defendants within forty-five (45) days of the order of the Court cease, or otherwise cause that any and all print, radio, and television advertising already deployed as of the date of the order of the Court be recalled and otherwise stopping all uses of CHOOSE YOUR ADVENTURE except for those uses where Defendants can specifically identify and prove that as of the date of the order of the Court, that it is specifically too late to make such a recall and shall certify its compliance with the order of the Court.

Dated: March 27, 2007

Respectfully submitted:
GORDON E. R. TROY, PC

By: _____

Gordon E. R. Troy
3333 Lake Road
PO Box 368
Charlotte, VT  05445
(802) 425-9060 Phone
(802) 425-9061 Fax
**gtroy@webtm.com** Email

*Attorney for Plaintiff, Chooseco LLC*

## Certificate of Service

The undersigned hereby certifies that a copy of **Motion For Preliminary Injunction And Memorandum Of Points And Authorities In Support Thereof along with Declaration of R.A. Montgomery and annexed exhibits** have been served on Defendants by depositing same via Federal Express overnight delivery to:

Counsel for Chrysler Corporation, BBDO Detroit Inc., Organic, Inc.:
  Sara Edelman
  Davis & Gilbert LLP
  1740 Broadway
  New York, New York 10019
  (212) 468-4897 (telephone)
  (212) 974-6942 (direct fax)
  (212) 468-4888 (main fax)
  sedelman@dglaw.com

Counsel for Marvel Entertainment, Inc.:
  Eli Bard
  Vice President, Deputy General Counsel
  Marvel Entertainment, Inc.
  417 Fifth Avenue
  New York, New York  10016
  (212) 576-8501 (direct dial)
  (212) 576-8506 (fax)

Dated: March 27, 2007

                         Respectfully submitted:
                         GORDON E. R. TROY, PC

                         By:
                           Gordon E. R. Troy
                           3333 Lake Road
                           PO Box 368
                           Charlotte, VT  05445
                           (802) 425-9060 Phone
                           (802) 425-9061 Fax
                           **gtroy@webtm.com** Email

                         *Attorney for Plaintiff, Chooseco LLC*